**Edith PORTER, Appellant,**

v.

**Leonard S. PORTER, Appellee.**

Court of Appeals of Kentucky.

Sept. 24, 1965.

David O. Welch, Ashland, for appellant.

A. W. Mann, John C. Vigor, Ashland, for appellee.

FREDERICK M. WARREN, Special Commissioner.

This is an appeal from the Boyd Circuit Court, and the controversy arises out of the marital difficulties of the appellant, Edith Porter, and the appellee, Leonard S. Porter.

Edith and Leonard S. Porter were married April 14, 1917. On November 8, 1961, Edith filed a complaint seeking a divorce, and asking for alimony; on December 1, 1961, Leonard filed his answer and counterclaim in which he sought the divorce; and thereafter Edith filed an amended complaint in which she requested lump-sum alimony. On March 1, 1963, the chancellor entered his findings of fact and judgment; such judgment was subsequently amended or modified, the ultimate result of which was to divorce the parties from the bonds of matrimony; and award the wife a certain home valued at $21,000, $10,000 in cash, $1,000 burial fund, and $250 per month for the remainder of her life (subject in the event of her remarriage, to termination at the end of 124 months or the date of such remarriage, whichever is later). The chancellor established a "commuted value" (based on Edith's life expectancy) of $34,372 upon the total monthly payments and gave the defendant (appellee) the option to pay such sum in full at such commuted value or in monthly installments as aforesaid. Hereafter, for brevity, we shall refer to this award in the aggregate of $66,372.

The appellant (plaintiff below) has appealed from such final order, and has presented to this court three separate matters for review:

(1) The divorce itself, appellant contending she was entitled thereto.

(2) The amount and manner of paying alimony.

(3) The allowance made to appellant's attorney for his services.

We will dispose of item (1) and (3) first.

■ This court has repeatedly and consistently declined to disturb the chancellor's findings or rulings respecting a judgment for divorce, in view of the long-existing statutory prohibition thereto. In the most recent case in which we had occasion to pass upon this question, DeSimone v. DeSimone, Ky., 388 S.W.2d 591, this court said:

"We need not consider the merits of appellant's argument that the chancellor erred in granting appellee a divorce since we have no jurisdiction over that portion of a judgment granting a divorce. KRS 21.060(1) (b); Hinton v. Hinton, Ky., 377 S.W.2d 888."

In accordance with such decision, historically followed by this court, so much of the appeal as concerns the divorce decree is dismissed.

■ Respecting the allowance made to appellant's attorney, in the DeSimone case, supra, this court held also that "Since appellant's attorney was not made a party to this appeal the questioned adequacy of the amount allowed him as a fee is not before us. McDowell v. McDowell, Ky., 378 S.W. 2d 814." See also Tyler v. Bryant, Ky., 394 S.W.2d 454, decided September 24, 1965.

We cannot find that appellant's attorney has been made a party to this appeal, and under such circumstances, and the authorities cited, this is not a matter for review by this court.

The only other question remaining, then, is that of alimony, the amount, if any, to be paid, and how it should be paid.

That there should be some fair property settlement or award of alimony appears to be one of the few matters in agreement—but there is disagreement as to the amount thereof and manner of payment. The appellee, without acknowledging liability therefor and without waiving any of his rights, at the very outset voluntarily offered his wife a home and $30,000 cash; the master commissioner who heard the proof recommended a sum equal to 45% of the jointly accumulated estate which he estimated at $155,000; the chancellor awarded $66,372 of an estate which he found to total $141,750; and the appellee seems content with the chancellor's order, at least he has not appealed therefrom.

Edith and Leonard Porter had been married for a considerable period of time when this action was commenced—some 44 years, or for ⅔ of their entire lifetime. They were then advanced in years, and of course are now more so; and their children are grown. Marital problems are difficult and unfortunate at any time, but more difficult and more unfortunate, it seems to the court, at the age of the parties hereto.

As so often occurs in this type of contested action, the voluminous testimony is conflicting and contradictory—but of this much we are reasonably assured by the record—this couple started life together with no material possessions, with nothing but confidence in themselves and each other; they struggled and worked diligently together; they raised a family of two children, now mature and both married; and during their joint enterprise in life acquired some degree of affluence. But as frequently happens in our hectic society, in their struggle for existence, and then their desire to acquire and accumulate more and more, perhaps only to assure themselves of independence and tranquility in the twilight of life, differences arose, and for some

years the marital relations have been less than desirable to both of them.

If they cannot live together peaceably and amicably, they should enjoy their remaining years separately, but independently of each other and comfortably, if their jointly acquired estate will permit—and it will.

■ There is disagreement respecting the size of the estate—the appellant, the appellee, the master commissioner, and the chancellor each arriving at a different amount ranging from the low of $141,750 to a high of $176,569.97. We do not deem it necessary to decide the value of this estate, since, regardless of the correct amount, as between such limits, we consider the chancellor's total allowance of $66,372 as adequate, fairly equitable, and well within the ⅓ measure or rule of thumb suggested by this court in numerous other cases. At the lower level of the estimated value of the estate, the chancellor's award represents slightly in excess of 45%, and at the maximum value the award amounts to something better than 37%. Therefore we are unwilling to change the aggregate amount of the chancellor's award to appellant. However, in accordance with the principle enunciated in Carlton v. Carlton, Ky., 286 S.W. 2d 919, we are of the opinion that such aggregate amount should have been granted as a lump-sum award. In so far as the judgment is in conflict herewith it is reversed.

In accounting for the lump-sum award of $66,372, the appellee shall receive credit for $21,000 for the home (it appearing there is no disagreement as to such valuation); a credit for $11,000, the cash award and burial fund provided for in the judgment aforesaid (assuming such sums have already been paid); be charged with interest at the rate of 4% per annum on $34,372 (the commuted value) from date of entry of the chancellor's judgment until paid; and be given credit on such last-mentioned item for each $250 monthly payment made. The interest charged, and the monthly payments credited shall be computed on the so-called direct reduction loan plan.

Judgment should provide that the balance owing on the "commuted value" be paid within 4 months of date of remand, with a lien against appellee's real estate to secure the payment thereof.

Wherefore we recommend that the cause be affirmed in part and reversed in part with directions to modify the judgment in accordance herewith.

The opinion is approved and the cause affirmed in part and reversed in part with directions to modify the judgment in accordance therewith.